THE STATE vs. C. MEYER ZULICH, Lieut. Colonel of the Second Regiment of District of Columbia Volunteers.

1. Where a person is charged with an offence against the laws of the United States, a state court has no authority to interfere, and order a release of the prisoner on a *habeas corpus* brought for that purpose.

2. If a soldier is arrested by authority of the United States for desertion, the prisoner cannot be released by a state court, or a judge thereof, on *habeas corpus;* and in such case the state court will not inquire into the legality of his enlistment; that is a question to be determined by a United States tribunal.

On *habeas corpus* in matter of Frederick Kniesch, Jr.

This cause came before Mr. Justice Ogden, at chambers, and was decided by him on a *habeas corpus,* brought to discharge the prisoner.

OGDEN, J.   The writ in this case was allowed on the application of the father of the prisoner. In his petition, presented to me at chambers, he alleged that his son, under the age of eighteen years, was illegally and unjustly confined and detained by C. Meyer Zulich, lieutenant colonel of the 2d Regiment of the District of Columbia Volunteers. At the time specified for the return, the defendant produced the body of his prisoner before me, and returned, with the writ, that he detained the prisoner because, on the 31st of January, 1862, he duly enlisted in the army of the United States, in Company C, of the District of Columbia Volunteers, and was duly and voluntarily sworn in, as a soldier of the army of the United States, for the term of three years, unless sooner discharged by the proper authority—he at the time representing himself to be over the age of twenty-one years; that afterwards, and during the term of service, he deserted from the army, and fled to the city of Newark, and that in compliance with special military orders, copies of which are appended to the return, he arrested the party in Newark, New Jersey, as a deserter, and holds him as a prisoner, being about to deliver him up to his commanding officer, in the city of Washington, for trial by a court martial.

The petitioner traversed the return in writing, by denying that his son was duly enlisted as a soldier in the army of the United States, or sworn in, as set forth in the return, stating, that at the time of the pretended enlistment he was under seventeen years of age, residing with his father in Newark; and that the pretended enlistment was without the knowledge or consent of the father or mother, or guardian or master of the infant. He also denies that the prisoner is a deserter from the army, and alleges that his arrest, confinement, and detention are illegal and unjust.

At the time and place fixed by me for a hearing, the district attorney of the United States, in behalf of the offi-

cer, moved that the prisoner should be remanded to custody, because the return showed a state of facts which divested a state tribunal of jurisdiction. It was contended that inasmuch as the return judicially apprised me that the party is in custody under the authority of the United States, I, acting under the authority of the state, could proceed no further with the investigation.

This insistment has brought up the interesting question whether, in such cases, the authority of the general government is supreme, and the jurisdiction of its judicial tribunals is exclusive, or whether the state tribunals, in the use of the writ of *habeas corpus,* have concurrent jurisdiction with that of the United States in granting relief in case of an unlawful imprisonment by an officer of the United States under color or by pretext of the authority of the United States.

The matter has frequently been discussed, and has received different decisions in different states of the Union. As early as 1819, Mr. Justice Southard, in delivering the opinion of the Supreme Court in the case of Anderson, where the question of jurisdiction *was waived,* took occasion to say that it would "require in him a great struggle, both of feeling and judgment, even to arrive at the point where he would be prepared to deny the jurisdiction of the state, and say that the highest tribunals of the state are incapable of inquiring into the imprisonment of her citizens, no matter how gross or illegal it may be, provided it be by agents of the United States, and under color of their laws."

The judicial power of the United States is commensurate with every case arising under the laws of the Union, and the federal courts, by acts of congress, have jurisdiction, exclusive of the state courts, of all crimes and offences cognizable under the authority of the United States. Hence Chief Justice Kent, in Ferguson's case, said that abuses of the authority of the United States were offences against the United States, and exclusively cognizable in

their courts ; and that when the state courts have not juris-diction over the *whole subject* matter of the imprisonment, and the federal courts have, by indictments as well as by *habeas corpus,* it appeared to him that there was a manifest want of jurisdiction in the case.

The latest discussion of this delicate and interesting question is found in the opinion of Chief Justice Ta-ney, delivered in 1858, in the case of Booth, charged with aiding and abetting the escape of a fugitive slave, reported in 21 *Howard.* After stating at length the powers conferred upon the general government by the constitution, and those surrendered expressly by the states, and the establishment and jurisdiction of the federal courts, he concludes, that although state courts are authorized to grant a writ of *habeas corpus,* yet when it appears that the person for whose discharge it is employed is in cus-tody under the authority of the United States the state jurisdiction ceases; that the prisoner being within the dominion and exclusive jurisdiction of the United States, their tribunals alone can punish him for an offence against their laws; and if wrongfully imprisoned, their judicial tribunals alone can release him and afford him redress. He indeed goes the length of saying that although it be the duty of the officer of the government to make known to the state tribunal, by a proper return to the writ, the authority under which he detains a prisoner, it is his imperative duty to hold on to him under the authority of the United States, and to refuse obedience to the mandate or process of any other government; that he should not take the prisoner before a state tribunal upon a *habeas corpus* is-sued under state authority ; and that it would be his duty to resist any attempt to control him in the custody of his pris-oner, and to call to his aid any force that might be neces-sary to maintain the authority of the law against illegal in-terference.

The exigencies of the service certainly require that the contracts of enlistment should be rigidly enforced where

they are not void for illegality; and public policy and the effectiveness of our army demand uniformity of decisions in matters of such vital interest. Enlistments are made under the laws of the United States, constitutionally enacted. The federal tribunals in the different states, deriving power from, and being responsible to the same source and authority, having complete if not exclusive jurisdiction over such subject matters by the use of the writ of *habeas corpus* and otherwise, it would be no abridgment of the right of the citizen to be protected in the enjoyment of his personal liberty, in such case to turn him over to the judicial power of the United States, where ready and effectual aid is provided by law for his security.

If the construction of the laws for enlistments and of the rules and articles of war be intrusted to state tribunals, the decisions may vary with the notions which prevail in different territorial spaces upon the doctrines of state sovereignty, and deserters be thus encouraged to betake themselves to states where lax views might prevail respecting the importance of maintaining the integrity of our arms in the existing national difficulties. If this case rested on the legality of the enlistment, I should decidedly incline to leave the petitioner to the action of the federal tribunals.

But the return states a fact which makes it eminently proper that the officer should retain the custody of his prisoner. He is not the commandant of the corps to which the prisoner was attached, but, being in the service of the United States, he was detailed by a competent military authority to proceed from Washington to different places in this state to arrest deserters; and, acting in that executive capacity, he arrested Kniesch as a deserter in Newark, and is about to report him to the commanding officer at Washington, and returns that he holds the person prisoner as a deserter. His authority to arrest and retain rests upon his deputation to overtake desert-

ers, and he cannot be presumed to have personal knowledge of the enlistment.

He was not required to know the facts of the case beyond those which show jurisdiction in the authority by which he was deputized, the enlistment and desertion of the prisoner. It is manifest that Kneisch went through the forms of enlistment and entrance into the public service ; and while *de facto* a soldier, he is charged with desertion. By the twentieth article of war, desertion is made a high crime, punishable by a court martial ; and the question presented by this branch of the case is, whether the due administration of justice should be retarded by the use of the writ of *habeas corpus*, and a person charged with crime, and in custody on criminal process, be permitted to arrest the proceedings, go behind the process, and show that he was incapable in law of committing the offence charged upon him, to wit, that his enlistment was voidable.

I think that only one true answer can be given to the proposition. Mutiny is made a crime by the seventh article of war ; but could it be gravely insisted that a soldier who entered the ranks of the army, and had excited, caused, or joined in a mutiny, which had resulted in the serious disorganization of the troops or company, would, when under arrest and before trial by court martial, on application of one having a right to his services or custody, through an interposition of the writ of *habeas corpus*, delay, and perhaps prevent a trial for the offence, by showing that there was a defect in his enlistment ?

The statement of the proposition suggests the only safe answer. The return of Col. Zulich shows that the person is in custody for a crime, by an arrest through competent authority, and he is authorized to continue him as a prisoner, to be dealt with according to law.